IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| LEGAL AID SERVICES OF OREGON, an Oregon non-profit corporation; AARON GUEVARA; JANICE MORGAN; SHARON LEE SCHWARTZ; DONNA SATHER; OREGON LAW CENTER, a Oregon non-profit corporation; DAVID HENRETTY; DIANE SCHWARTZ SYKES; LOREY FREEMAN; COMMUNITY APPLIANCE OF TENANTS; CAMPAIGN FOR EQUAL JUSTICE, an Oregon non-profit corporation, <br><br>        Plaintiffs, <br><br> v. <br><br> LEGAL SERVICES CORPORATION, <br><br>        Defendant. | CV. 05-1444-PK <br><br> OPINION AND ORDER |

PAPAK, Magistrate Judge:

      Plaintiffs Legal Aid Services of Oregon (LASO); Arron Guevara, Janice Morgan, Sharon

Lee Schwartz; Donna Sather; Oregon Law Center; David Henretty, Diane Schwartz Sykes,

Lorey Freeman; Community Alliance of Tenants; and the Campaign for Equal Justice filed an action against the Legal Services Corporation (LSC) under 28 U.S.C. § 2201 alleging that certain restrictions placed on their activities by the Omnibus Consolidated Rescissions and Appropriations Act (OCRAA) of 1996, Pub. L. No. 104-134, § 504, 110 Stat. 1321 (1996), reenacted in the Omnibus Consolidated Appropriations Act of 1997, Pub. L. No. 104-208, § 502, 110 Stat. 3009 (1997) (the 1996 Restrictions) and the implementing regulations promulgated by LSC, 45 C.F.R. § 1600 *et seq*., are unconstitutional facially and as-applied to them under the First and Fifth Amendments to the U.S. Constitution. On October 20, 2006, Judge Jones adopted the F&R granting summary judgment in LSC's favor on all of the claims except the as-applied claims.

Before the court is Plaintiffs' Motion to Compel (No. 87). Plaintiffs seeks an order compelling LSC to produce 89 documents and responsive testimony by Laurie Tarantowicz of the Inspector General's Office to deposition questions and awarding Plaintiffs attorney fees incurred in bringing this motion and re-taking depositions. The two issues before the court are whether the documents are protected by the attorney-client privilege and/or the deliberative process privilege.[1] Oral argument was heard October 4, 2007. Following oral argument, LSC provided the documents to the court for in camera review. For the reasons that follow, Plaintiffs' Motion to Compel is granted in part and denied in part.

---

[1]At oral argument, defense counsel also made reference to work product privilege. However, LSC did not claim work product privilege in response to Plaintiffs' request for the documents in question, did not brief the application of the doctrine to this factual context, and provided no examples of documents which should be protected by the privilege. Most significantly, none of the documents appear to have been prepared in contemplation of litigation. *See Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 864 (D.C. Cir. 1980).

## LEGAL STANDARD

### I. Motion to Compel

Federal Civil Procedure Rule 26(b)(1) authorizes discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Rule 26(b)(1) is to be construed broadly and encompasses any matter that bears on, or that reasonably could lead to other matters that would bear on, any issue that is or may be in the case. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

The burden of establishing that the attorney-client privilege or the deliberative process privilege applies to the documents in question rests with the party asserting the privilege. *Clarke v. American Commerce Nat. Bank,* 974 F.2d 127, 129 (9th Cir. 1992) (attorney-client privilege); *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

### II. Attorney Fees

Federal Civil Procedure Rule 37 provides that a party prevailing on a motion to compel discovery is entitled to award of attorney fees incurred in bringing the motion, absent special circumstances:

> (A) If [a] motion [to compel] is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

F.R.C.P. 37(a)(4)(A).

## FACTUAL BACKGROUND

I.      **Relationship between OIG and LSC**

LSC's Office of Inspector General (OIG) is an integral part of LSC. The Inspector General (IG) reports to and serves under the general supervision of LSC's Board of Directors. The IG and all of the OIG staff are employees of LSC, subject to the LSC Personnel Manual and policies.

Like other inspector generals, the LSC OIG serves, in part, an "inward" role, in which it monitors the activities of LSC Management to promote efficiency and detect fraud and abuse. In addition, the OIG has a unique, Congressionally mandated "outward" role in monitoring LSC grantees' compliance with applicable laws and regulations such as the PIR. As part of this "outward" role, Congress has given the OIG responsibility for developing guidance for the conduct of annual grantee audits by independent public accountants, and for conducting its own reviews of grantee compliance, including on-site monitoring, audits and inspections.

In connection with this "outward" role, the OIG works closely with LSC Management, and in particular with LSC's Office of Legal Affairs (OLA) and Office of Compliance and Enforcement (OCE). For example, the OIG may consult with LSC Management when it needs guidance with respect to applying the PIR and other regulations. Likewise, LSC Management may consult with OIG in determining LSC's ultimate conclusions on regulatory interpretations and applications. While this description seems to indicate two cooperative bodies, my review of the documents revealed that the relationship between LSC and OIG can be, at times, hostile and antagonistic as opposed to cooperative.

**II.     Discovery History**

On April 19, 2007, I issued an order compelling LSC to produce "internal and external communications regarding how it interprets and enforces the [Program Integrity Rule ("PIR")]," and a privilege log identifying any responsive privileged documents it is withholding.  LSC submitted a privilege log identifying documents protected by the attorney-client privilege and documents protected by the deliberative process privilege.[2]

During the August 15-16 depositions of Mark Freedman and Danilo Cardon, both representatives of LSC, and Laurie Tarantowicz, assistant inspector general and legal counsel for the IG when LSC asserted the attorney-client and deliberative process privileges and instructed Tarantowicz not to answer multiple questions.

On August 30, 2007, LSC produced a revised privilege log identifying additional documents as privileged.

ANALYSIS

**I.     Attorney-Client Privilege**

The purpose of the attorney-client privilege is to assure that a client's confidences to his or her attorney will be protected, and therefore encourage clients to be as open and honest as possible with attorneys. *Coastal States*, 617 F.2d at 862.  The privilege "is narrowly construed and is limited to those situations in which its purposes will be served." *Id.*  "To prevail on its attorney-client privilege claim, an agency must establish that the information conveyed formed part of a confidential communication to or by an attorney in the course of a professional

---

[2]In some cases, both privileges are asserted for the same document.

relationship." *Hornbeck Offshore Transp., LLC v. U.S. Coast Guard*, 2006 WL 696053, *14 (D.D.C. 2006), *citing Mead Data Central*, 566 F.2d at 253.

Nothing about the relationship between LSC and OIG leads me to believe that an attorney-client relationship existed while OIG was functioning in its capacity as external auditor. Even if that relationship existed, it does not appear that any of the information communicated between OIG and LSC was confidential. The communications at issue in this case are similar in nature to the communications at issue in *Coastal States Gas Corp.* There, the documents were from regional counsel to auditors working in Dept. of Energy field offices. The court determined that they were not protected by the attorney-client privilege, stating,

> We have difficulty in perceiving any purpose which would be served by applying the attorney-client privilege in this case. While it is clear that an agency can be a "client" and agency lawyers can function as "attorneys" within the relationship contemplated by the privilege, this does not seem to be such a case. It is hard to imagine the "confidential information" which an auditor might have communicated to the regional counsel. The factual situations the auditor communicates to the attorneys are encountered in the course of auditing third parties, the companies. They do not contain private information concerning the agency. Rather than "counseling," intended to assist the agency in protecting its interests, the memoranda here seem to be neutral, objective analyses of agency regulations. They resemble, in fact, question and answer guidelines which might be found in an agency manual.

Nor do I see the development of an attorney-client relationship between OIG and LSC in the post audit process. Furthermore, little of the internal communication at LSC, despite the fact that the documents are frequently generated from or sent to the Office of Legal Affairs (OLA), or the internal communication of OIG, although the documents are frequently prepared by or sent to general counsel, suggests the creation of an attorney-client relationship or addresses the types of communication ordinarily protected by that relationship. In a few documents, attorneys for LSC

and OIG are discussing a litigation risk assessment prepared by outside counsel and in that situation only I have applied the attorney-client privilege. *See e.g.* Doc. #68.

## II. Deliberative Process Privilege

The deliberative process privilege protects materials created by administrative agencies during the decision-making process. *Nat'l Wildlife,* 861 F.2d at 1114. The deliberative process privilege is unique to the government. The privilege has a number of purposes: it serves to assure that subordinates within an agency will feel free to provide the decision maker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action. *Coastal States Gas Corp.*, 617 F.2d at 866. The deliberative process privilege should be narrowly construed because confidentiality may impede full and fair discovery of the truth. *See Eureka Fin. Corp. v. Hartford Accident and Indem. Co.,* 136 F.R.D. 179, 183 (E.D. Cal. 1991), *citing Weil v. Investment/Indicators, Research and Management, Inc.,* 647 F.2d 18, 24 (9th Cir. 1981).

The deliberative process privilege applies to intra- and inter-agency documents. *See Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.,* 421 U.S. 168, 188 (1975) (Exemption 5 protects predecisional documents generated by an agency that lacks decisional authority where the documents were prepared for the purpose of advising another agency that does possess such authority.)

In order for documents to be protected under the privilege, two preliminary procedural

requirements must be satisfied: (1) there must be a "formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer," *United States v. Rozet,* 183 F.R.D. 662, 665 (N.D. Cal. 1998) (citing *Unites States v. Reynolds,* 345 U.S. 1, 7-8 (1953)), and (2) the information for which privilege is claimed must be specified and "precise and certain reasons" given for asserting confidentiality. *United States v. O'Neill,* 619 F.2d 222, 226 (3d Cir. 1980). Here, LSC has provided affidavits from LSC's Acting Inspector General, Ronald Merryman, and General Counsel, Victor Fortuno. In their affidavits, they discuss each document claimed as protected by the deliberative process privilege and explain why it should be so protected.

In addition to these procedural requirements, in order to fall within the deliberative process privilege, the documents must be "predecisional" (generated before the adoption of an agency policy) and "deliberative" (reflect the give-and-take of the consultative process). *Coastal States Gas Corp.*, 617 F.2d at 866; *Carter v. United States Dep't of Commerce,* 307 F.3d 1084, 1089 (9th Cir. 2002).

Applying these principles and precedents to this case, it is readily apparent that many of the documents at issue are protected under the deliberative process privilege, either as the deliberations of OIG leading up to a final audit report or the deliberations of LSC resulting in a final opinion ultimately shared with the affected grantee (and produced in discovery). Where the document does not reflect the give-and-take of the consultative process, I have not applied the privilege. *See e.g.* Doc. #29. Also, I have only applied the deliberative process privilege to the

opinion or recommendation section of a report, and not to the factual information contained in the document.[3]

The deliberative process privilege is a qualified privilege rather than an absolute privilege. Therefore, even if the privilege applies, the court must apply a balancing test whereby a litigant may obtain privileged documents "if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *FTC v. Warner Commc'ns., Inc.,* 742 F.2d 1156, 1161 (9th Cir. 1984).

In balancing the need to preserve the integrity of internal government deliberations with the need for open discovery, the court considers the following factors: (1) the relevance of the evidence sought to the litigation; (2) the availability of comparable evidence from other sources; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions. *Warner,* 742 F.2d at 1161. The court may also take into account (5) the interest of the litigant, and society, in accurate judicial fact finding and (6) the seriousness of the litigation and the issues involved. *L.H. v. Schwarzenegger*, 2007 WL 2009807, *2 (E.D. Cal. 2007) (citations omitted). Having considered the foregoing factors in the context of this case, I find that where the deliberative process privilege applies, Plaintiffs' need for those documents does not override LSC and OIG's interest in non-disclosure. I further find that LSC's response to discovery requests based on deliberative process privilege was substantially justified.

---

[3] In some instances, LSC has not explained the application of the privilege to a particular document. *See e.g.* Doc. #83. In those cases, I concluded that LSC has not met its burden of proof and, thus, I've not applied either privilege.

**CONCLUSION**

Based on the foregoing analysis, and recognizing that the deliberative process privilege is "dependent on the individual document and the role it plays in the administrative process," *Coastal States*, 617 F.2d at 867, I have reviewed all of the documents provided in camera, and as to Defendants' Motion to Compel (No. 87) order as follows: 1) the motion is denied based on the deliberative process privilege and also, where noted, also based on the attorney-client privilege (ACP) as to documents numbered 7, 16, 17, 18, 21, 59, 60, 63, 64, 68 (ACP), 97, 99, 100, 101, 102, 103, 104, 105, 106, 107 (ACP), 112, 113, 114, 115, 116, 117, 129, 130, 133, 140, 147, 148, 149, 150, 151, 152, 153, 154, 155, 157, 159, 160, 161, 163, 166; 2) the motion is granted as to documents numbered 29, 30, 37, 54, 77, 79, 83, 93, 96, 108, 109, 110, 111, 121, 126, 141, 142, 143, 144, 156, 162, 164, 165; 3) the motion is granted in part and denied in part, based on deliberate process privilege, as to documents numbered 14 (granted as to attachment 1 and 2), 98 (granted as CRLA 16 page further response), 118, 119, 120, 122, 123, 124, 125, 127, 128, 131, 132, 134, 135, 136, 137, 138, 139, 145, 146 (denied as to paragraphs labeled Summary of Results, Conclusion and/or Recommendation, and granted as to the remainder); and 4) the motion is denied based on deliberative process privilege as to questions asked at the Tarantowicz deposition. Plaintiffs' request for an award of attorneys fees and other costs for bringing this motion is denied.

Dated this 18th day of October, 2006.

    /s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge